IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM T. DIVANE, JR., et al., as the )
ELECTRICAL INSURANCE TRUSTEES, )
                                                )
            Plaintiffs,   )
                                                )
       vs.                      )    No. 06 C 4100
                                                )
ATASH INDUSTRIES, INC., et al.,      )
                                                )
           Defendants.  )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, the Electrical Insurance Trustees, sued several companies and an individual for past due ERISA contributions. Twice, the court denied summary judgment, but expressed its concern that plaintiffs would ultimately be unable to recover because defendants did not possess sufficient assets to satisfy all creditors (*see* Mem. Op. & Order Sep. 4, 2007). In response to the court's concern, plaintiffs now move the court to determine priority of defendants' existing liens. We comply only to the extent that we determine that any judgment the Trustees obtain in this action will be subordinate to the previously recorded liens of the Atash defendants.

## BACKGROUND

In order to properly understand the issues currently before the court, we must look back to a prior suit brought by the Trustees that was before our colleague Judge Hibbler. In May 2004, the Trustees sued Atash Electrical Contractors, Inc. ("Atash I"), and its sole shareholder and officer, John W. Puttrich. They alleged that Atash was liable for unpaid ERISA contributions for the period May 1, 2001, through March 31, 2004. They further

alleged that Puttrich wrote four checks to the Trustees that were returned from the bank for insufficient funds. Shortly before trial the Trustees and Atash I reached a settlement agreement. On October 20, 2004, Judge Hibbler entered judgment against Atash I in the amount of $197,405.51, which represented unpaid fringe-benefit contributions, liquidated damages and an audit fee, plus attorneys' fees and costs. The judgment also enjoined Atash I from work within the scope of the collective bargaining agreement, unless and until it furnished the Trustees with a standard fringe-benefit bond. Defendant Puttrich also settled with the Trustees, and the court entered judgment against him in the amount of $60,000. On November 5, 2004, the Trustees issued a citation to discover the assets of Atash I, in an attempt to collect the judgment. It appears from the record before us that the Trustees were unsuccessful in their attempts.

In September 2005, Atash I executed an assignment for the benefit of creditors and transferred all of its assets to ABCII, Inc.[1] According to the complaint, on September 19, 2005, ABCII sold all of the assets to Focus Fire Protection, Inc. Focus Fire was incorporated in the state of Illinois two days later, on September 21, 2005.

In July 2006, the Trustees filed this action against Atash Industries, Inc. ("Atash II"), Atash Fire & Safety Equipment Co., Inc. ("Atash III"), Focus Fire Protection, Inc., ABCII, Inc., and Robert J. Schlyer. The complaint repeats the allegations in the May 2004 complaint (although it inexplicably reduces the amount of the obligations due to $57,594.48). Count I[2] alleges that Atash II and Atash III are alter egos of Atash I and, therefore, liable to the Trustees

---

[1] Defendant Robert H. Schlyer is the president of ABCII, Inc.

[2] The complaint does not enumerate separate counts, but for the sake of clarity we have divided it into three separate counts.

for the unpaid obligations. Count II alleges that Focus Fire is a successor to Atash I, and therefore liable to the Trustees for the unpaid obligations. Finally, Count III alleges that ABCII, Inc. and Robert Schlyer violated both the Uniform Fraudulent Transfer Act (740 ILCS 150/1 *et seq.*) and the Illinois Corporate Fiduciary Act (205 ILCS 620/1-1 *et seq.*), because the assignment for the benefit of creditors and subsequent sale to Focus Fire were fraudulent transactions. As relief, the complaint asks that we enter judgment against all defendants in the amount of $57,594.48, and that we set aside the assignment for the benefit of creditors and subsequent sale to Focus Fire.

## DISCUSSION

We previously have expressed to the parties that we are somewhat confused as to what the disputes are in this case (*see* Mem. Op. & Order Sep. 4, 2007). Despite our admission, the parties have done little to help clarify the issues. The briefing on the current motion is no clearer. The motion itself is a scant three pages, the response also three pages, and the reply four pages. Left with these brief explanations, it falls upon us to discern the correct issues and the proper resolution. We are not entirely comfortable undertaking this task on the pleadings we have received. Nonetheless, the time has come for an answer, and we provide it below.

The Trustees styled the instant suit as an ERISA claim against the two purported alter egos and one successor of Atash I. We presume they chose this method so that they would not run afoul of the Supreme Court's decision in Peacock v. Thomas, 516 U.S. 349 (1996). Peacock generally precludes both ERISA jurisdiction and ancillary federal jurisdiction over suits to enforce previously obtained ERISA judgments. *See id.* at 353-54. Peacock, then, prevented the Trustees from filing suit in federal court in order to collect the October 20, 2004, judgment against Atash I.

After Peacock, the Seventh Circuit has recognized an exception to this prohibition when, in the second suit, the plaintiff alleges that an alter ego of original defendant is directly liable for the ERISA violation in question. *See* Board of Trustees, Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031, 1038 (7th Cir. 2000) (noting that efforts to pierce the corporate veil seek to establish vicarious liability, "but a contention that A is B's 'alter ego' asserts that A and B are the same entity; liability then is not vicarious but direct."); *see also* Central States, SE & SW Areas Pension Fund v. Central Transport, Inc., 85 F.3d 1282, 1286-87 (7th Cir. 1996). Under this exception, the Trustees are permitted to allege liability for the underlying ERISA violation for the purported alter egos, Atash II and Atash III. Similar reasoning would apply to the purported successor, Focus Fire.

That is precisely what the Trustees have done. In their complaint, the Trustees allege that Atash I "had no officers, directors, employees, assets, bank accounts, income, or records," and that all bargaining-unit work performed under the agreement was performed by employees of Atash II and Atash III, who are directly liable to the Trustees for the contributions. Further, they allege that there is substantial continuity in the operation of business between Atash I and Focus Fire, and that Focus Fire had actual and constructive knowledge of the ERISA obligations to the Trustees.

With these allegations in mind, we are confused by the Trustees' arguments regarding priority of liens. In their briefs, the Trustees completely change their focus. They argue that for the purposes of priority they became a judgment lien creditor on November 8, 2004, when they served a citation to discover assets upon Atash I, pursuant to Judge Hibbler's October 20, 2004, judgment (def.'s resp. to plf's mot. regarding priority of claims, at 3). The defendants argue that this judgment was never perfected and is subordinate to a host of other recorded

liens. But the October 20, 2004, judgment has very little to do with the instant proceedings. This lawsuit cannot be a suit to enforce the October 20, 2004, judgment – such a suit is barred by Peacock. This lawsuit is a new suit to determine if the alter egos have incurred their own liability to the Trustees. If we ultimately find for the Trustees on Count I, that the alter ego companies have incurred ERISA liability, then we will enter a new judgment against Atash II and Atash III. That new judgment will be subordinate to a long line of creditors whose liens far exceed any available assets. At this stage we need be no more specific than that.

The remaining counts also have no bearing on the priority of liens for the three Atash companies. If we find Focus Fire liable in Count II, we will issue a new judgment against that entity, not the Atash companies. We are currently unable to prioritize liens against Focus Fire because the parties have not provided us with any relevant information. But it is sufficient at this point simply to say that the judgment will be separate and distinct from the October 20, 2004, judgment against Atash I.

The Trustees also invoke our supplemental jurisdiction to allege state law claims under UFTA and ICFA against ABCII, Inc. and Robert Schlyer. Because we have framed the issues as we have laid out above, we decline to exercise our supplemental jurisdiction on these state law claims and dismiss Count III for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1367.

Section 1367 provides federal courts with supplemental jurisdiction to hear state law claims that are "so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). To form part of the "same case or controversy," the federal and state law claims must derive from a "common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715,

725 (1966). Further, supplemental jurisdiction is "a doctrine of discretion, not plaintiff's right" for his own convenience. *Id.* at 726.

Counts I and II turn on the business operation of the three Atash defendants and Focus Fire. In order to demonstrate that Atash II and Atash III are alter egos of Atash I, the Trustees will need to demonstrate a lack of respect for the separate identity and an unlawful intent to avoid the obligations. *See* <u>Central States</u>, 85 F.3d at 1288. In order to show that Focus Fire is a successor of Atash I, the Trustees will need to show that there was sufficient continuity between the two companies and that Focus Fire had notice of Atash I's obligation to the Trustees. <u>Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac</u>, 920 F.2d 1323, 1329 (7th Cir. 1990).

In contrast, to prove a violation under UFTA the Trustees will need to show that the transfer of assets to ABCII, Inc. and the subsequent sale to Focus Fire occurred "with actual intent to hinder, delay or defraud any creditor of the debtor." 740 ILCS 160/5(a)(1). In order to prove a violation of the ICFA, the Trustees must demonstrate that ABCII, Inc. and Schlyer owed a fiduciary duty to the Trustees as creditors of the Atash defendants and that that duty was violated by the sale to Focus Fire. The facts necessary to support these claims deal only with the method and motivation of the asset transfers and are distinct from the facts needed to show Atash II and Atash III were alter egos of Atash I, or whether Focus Fire is a successor to Atash I. Because the factual and legal inquiries in the state law claims are completely separate and predominate what is otherwise a straightforward ERISA analysis, we decline to exercise supplemental jurisdiction over Count III pursuant to 28 U.S.C. § 1367(c)(2).[3]

---

[3] We briefly note that even if we had decided the question of supplemental jurisdiction differently, and the plaintiffs were ultimately successful, they would still be unable to recover. Any new judgment against the defendants on Count III would be a new and separate judgment that would be subordinate to the same creditors whose liens exceed the available assets.

## CONCLUSION

For the reasons stated above, we determine that any judgment rendered against Atash II or Atash III will be a new judgment subordinate to any existing liens. We make no determination as to the priority of any future judgment against Focus Fire. Finally, we dismiss the state law claims against ABCII, Inc. and Robert Schlyer.

JAMES B. MORAN
Senior Judge, U. S. District Court

April 30, 2008.